UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER A. GARMHAUSEN,

     Plaintiff,

v.                                        Hon. Sally J. Berens

COMMISSIONER OF                           Case No. 1:20-cv-539
SOCIAL SECURITY,

     Defendant.

_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making his

decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## Procedural Posture

Plaintiff filed an application for DIB on March 13, 2017, alleging that she became disabled as of December 22, 2016, due to depression, anxiety, post-traumatic stress disorder (PTSD), back pain, and narcolepsy. (PageID.130–31, 234–35.) Plaintiff was age 51 at the time of her alleged onset date. (PageID.130.) She had completed four years of college and had previous employment

as a unit clerk. (PageID.264.) After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge (ALJ).

ALJ Sarah Zimmerman conducted a hearing on February 25, 2019, and received testimony from Plaintiff and Susan J. Rowe, an impartial vocational expert. (PageID.89–116.) On June 5, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled from her alleged onset date through the date of the decision. (PageID.69–83.) The Appeals Council denied Plaintiff's request for review on April 20, 2020 (PageID.54–57), making ALJ Zimmerman's February 25, 2019 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on June 11, 2020.

### Analysis of the ALJ's Opinion

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) depression; and (3) PTSD. (PageID.71.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.59–60.) The ALJ specifically considered listings 1.04, 12.04, and 12.15. As for the "paragraph B" factors applicable to listings 12.04 and 12.15, the ALJ found that Plaintiff was mildly limited in the area of understanding, remembering, or applying information, and moderately limited in the areas of interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing oneself. (PageID.72–74.)

4

With respect to Plaintiff's RFC, the ALJ determined that she retained the capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), subject to the following limitations:

> She can stand and/or walk for 8 hours and sit for 8 hours during an 8-hour workday; can never be exposed to dangerous machinery or hazardous heights; is able to carry out simple instructions; and can occasionally interact with supervisors, coworkers, and the public. She is unable to work at a production rate pace, such as on an assembly line; and she is able to tolerate occasional changes in the routine work setting.

(PageID.74.)

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work. (PageID.81.) At step five, however, based on testimony from the vocational expert, the ALJ found that Plaintiff could perform the occupations of industrial cleaner, laundry worker, and floor cleaner, 238,000 of which existed in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.67–68.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises three issues in her appeal: (1) the ALJ committed reversible error by failing to properly weigh the opinions of Plaintiff's treating psychiatrists; (2) the ALJ committed reversible error by failing to assign proper credibility to Plaintiff's testimony; and (3) the ALJ committed reversible error by relying upon impermissible boilerplate language to justify her decision without properly considering Plaintiff's testimony. (ECF No. 18 at PageID.678.) Plaintiff limits her arguments to the ALJ's evaluation of her mental impairments and the opinions of her treating psychiatrists.

## I.      Evaluation of Treating Physician Opinions

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.[2] *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation

---

[2] Although Plaintiff suggests that it is not clear whether the treating physician rule applies in this case, the ALJ clearly applied the rule and there should be no issue about its application as Plaintiff filed her claim on March 13, 2017, while the treating physician rule was still in effect. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844–01, 2017 WL 168819 (Jan. 18, 2017).

omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

By way of background, Plaintiff reported that she had been diagnosed with depression in her twenties and had a strong family history of mood issues. (PageID.543.) She had also been in a physically- and mentally-abusive marriage that ended in about 2014. (PageID.396, 544.) As a result of the relationship, Plaintiff suffered frequent panic attacks, nightmares, and flashbacks. She also reported difficulty sleeping and concentrating, as well as loss of interest, energy, and motivation. (PageID.544–45, 637–38.) Plaintiff has been treated over the years with approximately eleven psychiatric medicines that have not fully controlled her symptoms, resulting in "good days and bad days." (PageID.101.) Plaintiff was treated in a partial hospitalization program at age 20 for bipolar disorder. (PageID.638.) In August 2016, several months before her alleged onset date, she was admitted to Forest View Hospital with depression, anxiety, and suicidal ideation. (PageID.416–17.) She was discharged after two days, with diagnoses of mood disorder NOS and

borderline personality disorder. (PageID.416.) Shortly thereafter, she was admitted to a partial hospitalization program at Pine Rest Hospital from August 19, 2016, through September 2, 2016. (PageID.387.) With treatment, Plaintiff was able to return to her job on September 20, 2016. (PageID.387.) However, she was terminated about three months later due to excessive time off work because of her depression. (PageID.634, 637.)

A.    **Stephanie Woodfin, D.O.**

Dr. Woodfin was Plaintiff's treating psychiatrist since 2011. In February 2016, and later, apparently in August 2016, she completed FMLA certifications indicating that Plaintiff was unable to perform any job functions due to chronic episodes of severe depression. (PageID.372–75, 377–80.) The ALJ gave these opinions little weight because they were provided "well before" Plaintiff's alleged onset date and were "too remote" to be probative of Plaintiff's functioning during the relevant period. (PageID.80.) Plaintiff does not question this reasoning. However, Dr. Woodfin provided two other statements during the period, which the ALJ assessed as follows:

> Dr. Woodfin provided another statement dated July 16, 2018, in which she opined that the claimant experiences debilitating depression and she fully supports her application for disability. She opined that the claimant is currently unemployable due to her mental health symptoms, including overwhelming depression, anxiety, and insomnia (Ex. 10F). In a letter and Assessment of Mental Residual Functional Capacity dated January 9, 2019, she provided that the claimant's impairments cause marked or extreme limitations, and would cause her to miss one week of work per month. She stated that the claimant is "quite incapacitated and cannot function sometimes well enough to complete self-care or tolerate usual daily tasks (much less work)" (Ex. 12F/l-5). These opinions are given little weight for multiple reasons. First, whether or not the claimant is disabled is a determination reserved for the Commissioner. Second, her assessment is at odds with the generally normal or mild findings indicated on mental status examinations and the claimant's reported activity level. Third, the record lacks evidence of the need for advanced treatment since the claimant's alleged onset date. The evidence demonstrates that she retains the mental functioning sufficient to complete a wide range of daily activities, including attending to her personal needs, cooking, taking care of her dogs, attending her child's sporting events, babysitting, and socializing with friends. Finally, treatment notes show that the claimant is now seeing a different

provider and she has experienced improvement in her symptoms with prescription medication (Ex. 4E; 11F/2; 13F-14F).

(PageID.80.)

The ALJ was correct that a conclusion regarding the ultimate issue of disability is not entitled to weight, as whether a claimant is "disabled" or "unable to work" are issues reserved to the Commissioner. 20 C.F.R. § 1527(d) (1), (3); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004). The ALJ cited additional reasons for giving little weight to the balance of Dr. Woodfin's opinions. Her second reason actually comprises two: (1) inconsistency with generally normal or mild mental status exams findings; and (2) inconsistency with Plaintiff's "reported activity level," which presumably refers to the "wide range of daily activities" the ALJ cited.

Taking the latter reason first, Plaintiff contends that the ALJ's reliance on her daily activities runs afoul of *Gayheart*. In *Gayheart*, the court recognized that an ALJ should not view a claimant's limited list of daily activities as evidence of non-disability when assessing mental impairments if the record does not support that the claimant could perform these activities on a sustained basis, "which is how the functional limitations of mental impairments are to be assessed." 710 F.3d at 377 (citing 20 C.F.R. § 404.1520a(c)(2) and 20 C.F.R. Par 404, Subpt. P, App'x 1, at 12.00.). The ALJ in *Gayheart* found the plaintiff's activities of visiting friends and neighbors inconsistent with the treating physician's social and daily living restrictions. The court observed, however, that the plaintiff's "ability to visit his aunt and uncle, who live on his street, and to receive occasional visits from his neighbor" did not undermine the physician's opinion that plaintiff was markedly impaired in his ability to interact independently and appropriately with others. *Id.*

Here, it is safe to say that Plaintiff's limited activities, alone, do not indicate an ability to perform work activities on a sustained basis. *See Rogers v. Commissioner*, 486 F.3d 234, 248-49

(6th Cir. 2007) (finding that activities of driving, cleaning, caring for two dogs, doing laundry, reading, doing stretching exercises, and watching the news were "not comparable to typical work activities"). The Court also agrees with Plaintiff that the ALJ overstated some of these activities. For example, during the two-year period at issue, Plaintiff babysat, unpaid, only twice for about two hours each time, and she attended only one sporting event—her daughter's weekend crew event in September 2017. (PageID.109, 597.) And if Plaintiff's activities were the ALJ's only reason for discounting Dr. Woodfin's opinion, remand would be warranted.

But the ALJ cited additional reasons, including generally normal or mild exam findings. As an example, she cited Dr. Hartwig's January 25, 2019 findings that Plaintiff was cooperative, had normal psychomotor activity and attention, good mood, linear thought process, average intelligence, and good insight and judgment. (PageID.657–58.) Both Dr. Woodfin and Dr. Hartwig made similar findings throughout much of the relevant period. (PageID.118, 121, 124,623, 624, 639, 641–42, 647, 649.) Although Plaintiff contends that such findings do not mean that a claimant is not disabled and may be highly misleading, (ECF No. 18 at PageID.680 (citing *Wanserski v. Colvin*, No. 1:14-cv-1033-DKL-JMS, 2015 WL 5692521 (S.D. Ind. Sept. 28, 2015)), they are one aspect of the total picture that an ALJ may consider in evaluating a treating source's opinion regarding a claimant's mental functioning. *See Mason v. Comm'r of Soc. Sec.*, No. 17-2407, 2018 WL 6133750, at *1 (6th Cir. Apr. 30, 2018); *O'Connell v. Comm'r of Soc. Sec.*, No. 16-1392, 2017 WL 4570466, at *2 (6th Cir. Feb. 27, 2017). The ALJ also noted that Plaintiff's symptoms improved with medication. (PageID.638 (reporting "that her medications are helping" and "her depression is improved"); 642 (increase in Buspar "helped noticeably and her symptoms of depression and anxiety are decreased"); 657 (noting that "Abilify has helped her significantly").) The ALJ also cited the lack of need for advanced treatment during the period at issue. These were

10

also proper considerations. *See Mason*, 2018 WL 6133750, at *1 (the plaintiff's improved condition with prescribed medication regiment was a proper basis for assigning treating psychiatrist's opinion little weight); *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 806 (6th Cir. 2011) (concluding that the ALJ properly discounted the treating physician's opinion based on the plaintiff's "conservative treatment"); *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *5 (W.D. Mich. July 11, 2016) ("The Sixth Circuit has found that conservative treatment may constitute a 'good reason' for discounting a treating physician's opinion."). Accordingly, the ALJ articulated "good reasons" for assigning little weight to Dr. Woodfin's opinion.

### B.    **Thomas Hartwig, M.D.**

Dr. Hartwig became Plaintiff's treating psychiatrist after Dr. Woodfin closed her practice. He declined to complete the mental assessment form that Plaintiff provided but did opine that Plaintiff's "symptoms ha[d] not appreciably changed since the prior letter from Dr. Woodfin regarding her opinion that the patient was unable to work." (PageID.80.) The ALJ gave Dr. Hartwig's opinion little weight as follows:

> This opinion is inconsistent with the evidence of record, summarized above, including Dr. Hartwig's own treatment notes, which showed generally normal findings on mental status examinations. Additionally, providers reported that the claimant's condition is stable with medication and she declined any medication changes. The claimant stated that Abilify has "significantly" helped, and mental status examiners reported that the claimant was polite and cooperative, and her memory, concentration, and judgment were all within normal limits (Ex. 1F/7, 9, 37, 42, 55-56; 2F/12; 3F/2; 8F/2, 5; 9F/4, 7; 11F/3, 5; 14F/1-2).

(PageID.80.) For the reasons discussed above, the ALJ gave  "good reasons," supported by substantial evidence, for assigning Dr. Hartwig's opinion little weight.

Therefore, this claim of error is rejected.

## II.     Evaluation of Subjective Symptoms (Issues (2) and (3))

An ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at *3 (W.D. Mich. Mar. 26, 2019). As explained in *Palmer v. Commissioner of Social Security*, No. 1:17-cv-577, 2018 WL 4346819 (W.D. Mich. Aug. 9, 2018), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 11, 2018):

> The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

*Id.* at *6.

Consistent with prior ruling SSR 96-7p, *see Rogers*, 486 F.3d at 248, SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.

1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* The Sixth Circuit has said that such findings "may not be disturbed absent compelling reason," and in general, "are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted). However, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248.

Citing *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014), Plaintiff contends that the ALJ used improper boilerplate language to evaluate her subjective symptoms. (ECF No. 18 at PageID.681–82.) Plaintiff points to the following paragraph:

> After careful consideration of the evidence, the undersigned finds that some of the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, some of the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(PageID.76.) The ALJ summarized Plaintiff's alleged mental symptoms as follows:

> The claimant has alleged that she is disabled due to the symptoms and limitations associated with her DDD, depression, and PTSD. . . .
>
> . . . .
>
> Psychotherapy notes show that the claimant has reported symptoms of "traumatic events in marriage and since marriage including loss of connection with children, avoidance, hypervigilance, sleep disturbance, difficulty concentrating, physical effects such as stuttering/twitching, frozen/dissociation" (Ex. 1F/88). During a consultative examination, the claimant reported experiencing depression, difficulty sleeping and concentrating, and loss of interest and motivation. Additionally, she noted having nightmares, flashbacks, an exaggerated startle response, noise sensitivity, and hypervigilance (Ex. 4F/2-3).

>The claimant noted on her Adult Function Report that her impairments affect her memory, concentration, and understanding. Furthermore, she reported difficulty following instructions, completing tasks, and getting along with others (Ex. 4E).

(PageID.75.)

After describing Plaintiff's symptoms, the ALJ noted that prescription medication had generally been effective in controlling her symptoms, that mental status examinations demonstrated largely mild or normal findings, and that Plaintiff had not required advanced treatment during the relevant period. The ALJ then discussed Plaintiff's treatment notes, including those of Amy Borgman, Ph.D., indicating that in 2017 Plaintiff had made "excellent progress" with EMDR (eye movement desensitization and reprocessing) treatment, and those of Dr. Hartwig in 2018 noting that Plaintiff had reported "doing well," and her symptoms were "stable." (PageID.77–78.) The ALJ also cited Plaintiff's daily activities and concluded that the evidence did not support Plaintiff's alleged level of mental impairment. (PageID.78.)

For the reasons set forth above regarding the treating psychiatrists' opinions, the ALJ's reliance on Plaintiff's daily activities is not a sufficient basis to discount her subjective symptoms. Nonetheless, the ALJ cited other valid considerations supporting her decision that Plaintiff's mental impairments were not as limiting as Plaintiff claimed. Moreover, the ALJ included appropriate limitations in her RFC finding to account for Plaintiff's mental impairments, including limiting her to work involving simple instructions, occasional interaction with others, and no production-rate work. Although Plaintiff contends that the ALJ erred in finding Plaintiff's testimony not credible because she was discharged from physical therapy when, in fact, Plaintiff had lost her insurance (ECF No. 18 at PageID.678–79), the Court does not read that portion of the ALJ's decision as discounting Plaintiff's testimony on that basis or as pertaining to Plaintiff's mental impairments.

While Plaintiff takes issue with the ALJ's evaluation, she provides no compelling reason to disturb the ALJ's analysis of her subjective symptoms, which was "not so wholly arbitrary so as to carry the ALJ's decision outside the 'zone of choice' that the ALJ possesses in rendering disability decisions." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009).  Finally, contrary to Plaintiff's argument, the ALJ did not rely solely on a conclusory boilerplate paragraph to address Plaintiff's subjective complaints, but instead, as set forth above, articulated her reasons for finding Plaintiff not as limited as she had claimed. *See Thompson v. Comm'r of Soc. Sec.*, No. 1:16-cv-988, 2017 WL 3484224, at *10 (W.D. Mich. Aug. 15, 2017) (finding no error in inclusion of "boilerplate language" "because the ALJ followed it with an additional discussion of several specific reasons supporting evaluation of the claimant's credibility).

Thus, Plaintiff's claim of error is rejected.

### Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

An order consistent with this opinion will enter.


Dated: February 14, 2022                              /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      U.S. Magistrate Judge